IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IYHANA BYRD, | § § § | |
| Plaintiff, | § § | No. 4:18cv778 |
| VS. | § § | Jury Trial Demanded |
| CITY OF HOUSTON, | § § | |
| Defendant, | § | |

**<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH
RESPECT TO LIABILITY AND LIQUIDATED DAMAGES</u>**

David C. Holmes, Attorney in Charge
State Bar No. 09907150
Southern District No. 5494
13201 Northwest Freeway, Suite 800
Houston, Texas 77040
Telephone: 713-586-8862
Fax: 713-586-8863
dholmes282@aol.com

ATTORNEY FOR PLAINTIFF

**TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT AND OVERVIEW OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.        Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.       The City Violated the FMLA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            A.       The City Is Estopped from Denying Eligibility and Coverage . . . . . . . . . . . . . . . . 7

            B.       The Remaining Elements of an Interference Claim Are Undisputed . . . . . . . . . . 9

            C.       The City Fired Ms. Byrd for Absences That Were Covered by the
FMLA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.      The City is Liable for Liquidated Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Case 4:18-cv-00778   Document 14   Filed on 10/25/18 in TXSD   Page 3 of 17

# TABLE OF AUTHORITIES
**Cases**

*Hite v. Vermeer Mfg. Co.*, 446 F.3d 858 (8th Cir. 2006) ................................. 12

*Holder v. Illinois Dep't of Corr.*, 751 F.3d 486 (7th Cir. 2014) ............................. 8

*Lanier v. Univ. of Tex. Southwestern Med. Ctr.*, 527 Fed. Appx. 312 (5th Cir. 2013) .......... 9

*Minard v. ITC Deltacom Communications, Inc.*, 447 F.3d 352 (5th Cir. 2006) .............. 2, 7

**Statutes and Rules**

29 U.S.C. § 2611(2)(A) ........................................................................ 7

29 U.S.C. § 2611(4)(A)(iii) ................................................................... 7

29 U.S.C. § 2617(a)(1) ...................................................................... 11

29 U.S.C. § 2617(a)(1)(A)(3) ................................................................ 12

29 C.F.R. § 825.300(b)(1) .................................................................... 8

29 C.F.R. § 825.300(b)(2) .................................................................... 8

29 C.F.R. § 825.300(e) ....................................................................... 8

29 C.F.R. § 825.301(d) ....................................................................... 8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IYHANA BYRD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 4:18cv778 |
| VS. | § | |
| | § | Jury Trial Demanded |
| CITY OF HOUSTON, | § | |
| | § | |
| Defendant, | § | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT WITH
RESPECT TO LIABILITY AND LIQUIDATED DAMAGES**

Plaintiff Iyhana Byrd files this Motion for Summary Judgment with Respect to Liability and Liquidated Damages.

**NATURE AND STAGE OF THE PROCEEDING**

This is a wrongful termination suit under the Family and Medical Leave Act (FMLA). The Court set the case on a briefing schedule for summary judgment.

**ISSUES PRESENTED**

1. Whether the City of Houston is estopped from denying Ms. Byrd's eligibility for FMLA leave, given that the City confirmed her eligibility for leave both orally and in writing.

2. Whether the City of Houston interfered with Ms. Byrd's rights under the FMLA when it retroactively disapproved her eligibility under the FMLA and then fired her for taking leave that would otherwise be covered by the FMLA.

3. Whether the City of Houston had an objectively reasonable basis for its actions that would mitigate its liability for liquidated damages under the FMLA.

These issues are governed by the usual summary judgment standard under Rule 56: whether the summary judgment evidence raises a genuine issue of material fact.

1

## SUMMARY OF ARGUMENT AND OVERVIEW OF THE CASE

Ms. Byrd was a 911 operator for the City of Houston. In January 2018, Ms. Byrd's daughter became ill and was hospitalized. The City informed Ms. Byrd that she was eligible for FMLA leave to care for her daughter. Relying on that information, Ms. Byrd took the FMLA leave. After Ms. Byrd returned to work, the City retroactively declared her ineligible, claimed it had been a mistake all along, and then fired her for missing work.

Incredibly, the City has claimed in a companion case involving a co-worker (Brittany Riley) that the City's FMLA Coordinator was incompetent and did not understand the criteria for eligibility under the FMLA. The City also claims that its payroll system was inadequate to determine whether an employee was eligible for FMLA leave.

In any event, Ms. Byrd was technically not eligible for FMLA leave because she had not worked for the City for a full year. However, the City told Ms. Byrd that she was eligible, and Ms. Byrd relied on the City's representation that she was eligible. The Fifth Circuit framed the issue in this sort of case as follows:

> Accordingly, an employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an "eligible employee" and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment.

*Minard v. ITC Deltacom Communications, Inc.,* 447 F.3d 352, 359 (5th Cir. 2006). As we will show in this motion, each of the elements under *Minard* is present: the City made a definite representation that Ms. Byrd was eligible for leave, the City had reason to believe that Ms. Byrd would rely on it, and Ms. Byrd reasonably relied on the representation in taking leave. Accordingly, the City is estopped to deny FMLA eligibility and coverage.

2

Realizing its error and its liability under the FMLA, the City recently concocted a story that it really fired Ms. Byrd for other reasons. The City claims that Ms. Byrd had large numbers of absences in 2017 and that she was really fired in 2018 for the 2017 absences. However, the summary judgment evidence reflects that (1) the termination letter states that the City was terminating Ms. Byrd for <u>unscheduled</u> absences: (2) likewise, the relevant rules for the City's probationary employees refer to <u>unscheduled</u> absences; (3) the City's contemporaneous records show that virtually all of the 2017 absences were approved and scheduled, because even probationary employees accrue sick leave and vacation time; (4) the City never counseled Ms. Byrd for any of those absences, which the City's policy required if any of the absences had been grounds for discipline; and (5) the City has produced no contemporaneous records indicating that Ms. Byrd's job was in jeopardy prior to the retroactive denial of the FMLA leave.

Furthermore, Ms. Byrd's co-worker (Brittany Riley) took FMLA leave at roughly the same time as Ms. Byrd. The City also retroactively disapproved Ms. Riley's leave and then fired her shortly before it fired Ms. Byrd. The notion that these terminations were not linked to the denial of FMLA leave a few days earlier is thus preposterous. Because there is no genuine issue of material fact as to whether Ms. Byrd was fired for taking this leave, Ms. Byrd is entitled to summary judgment.

Finally, Ms. Byrd is entitled to liquidated damages unless the City can prove that its actions were objectively reasonable and subjectively in good faith. It could never be objectively reasonable to fire an employee based on a retroactive denial of FMLA eligibility. The City throws its FMLA Coordinator under the bus, claiming that she was incompetent and did not understand FMLA eligibility. This does not make the termination objectively reasonable. Accordingly, Ms. Byrd is entitled to liquidated damages as a matter of law.

**ARGUMENT**

I.  Statement of Facts

The facts in this motion are contained in (1) the Joint Statement of Undisputed Facts (JSUF) and its Appendix (JSUF App.) (Doc. 13); (2) the Declaration of Iyhana Byrd (Byrd Decl.), (3) the Declaration of Brittany Riley (Riley Decl.); and (4) the Affidavit of Shirley Blackshear (Blackshear Aff.). The declarations and affidavits are in the Appendix to this motion.

In May 2017, Ms. Byrd went to work for the City of Houston as a 911 Telecommunicator. Basically, this means that she was a 911 operator working in the Houston Emergency Center (HEC). JSUF ¶ 1. She was still a probationary employee as of early 2018. JSUF ¶ 2.

In January 2018, Ms. Byrd's daughter became ill and was hospitalized. Ms. Byrd needed time off to care for her. When Ms. Byrd talked to HR, the HR representative assured her that she could take FMLA leave to care for her daughter. Byrd Decl. ¶ 4. Ms. Byrd requested the FMLA packet (a collection of forms and notices) on February 1, 2018. JSUF ¶ 4. Shirley Blackshear, the FMLA Coordinator, sent the FMLA packet to Ms. Byrd on February 6, 2018, and Ms. Byrd signed and returned some of the forms on February 9, 2018. JSUF ¶¶ 5-6, 26-27.

On February 9, 2018, the City's FMLA Coordinator, Ms. Blackshear, certified that Ms. Byrd was eligible for FMLA leave. Ms. Blackshear signed a form entitled Notice of Eligibility and Rights & Responsibilities (Family and Medical Leave Act). JSUF ¶ 7; JSUF App. at 63-64. The Notice contained the following:

> This Notice is to inform you that you:
> ☒ Are eligible for FMLA leave (See Part B below for Rights and Responsibilities)

Ms. Byrd knew nothing about the legal requirements for FMLA leave, but she had no reason to question the assurance from the "FMLA Coordinator" that she qualified for FMLA leave.

4

Byrd Decl. ¶ 4. Ms. Byrd relied on the assurances from the City that she qualified for leave. If she had known that she could lose her job for taking leave, she and her family would have explored other options for caring for her daughter. In fact, she had family members who could have covered for her at the hospital while she went to work, though it would of course be better for her daughter to have her mother there. Ms. Byrd could not afford to lose her job. Byrd Decl. ¶ 4.

The FMLA Coordinator also provided a form entitled Certification of Healthcare Provider form, which stated that it was due on February 21, 2018. JSUF ¶ 8; JSUF App. at 77-79. The form shows that the doctor eventually completed and signed it on February 20, 2018.

Ms. Byrd took leave from about February 1, 2018, to about February 11, 2018, returning to work on February 12, 2018. Byrd Decl. ¶ 5; JSUF App. at 40-41. After Ms. Byrd returned from her leave, she was shocked to receive an FMLA DISAPPROVAL NOTIFICATION dated February 13, 2018 from the FMLA Coordinator – the same person who had approved the leave. JSUF ¶ 9, 28; JSUF App. at 17; Byrd Decl. ¶ 5. The FMLA Coordinator stated that Ms. Byrd had never been eligible ("Eligibility requirements 1250 hours or worked 1 full year").

Nine days later, on February 22, 2018, the City fired Ms. Byrd for missing time from work and told her that she could not appeal the decision because she was a probationary employee. JSUF ¶ 10. The letter, which was signed by HEC Director David Cutler, states:

> Ms. Byrd has been employed with the City of Houston since May 8, 2017. Since then, Ms. Byrd has displayed unacceptable attendance. As of February 22, 2018, Ms. Byrd has exceeded 40 hours of unscheduled time (88 hours unscheduled). Despite receiving training on all HEC policies during orientation, Ms. Byrd continued to accumulate unscheduled time during her probationary period. Unacceptable attendance by a probationary employee is in violation of the following HEC policy:
>
> > HEC 300-02, Attendance and Punctuality: VI. Progressive Actions Guidelines for Attendance
> > *Employees exhibiting unacceptable attendance patterns (non-FMLA) will be subject to disciplinary action up to, and including, indefinite suspension. The extent of corrective action will be determined by the employee's attendance history.*

5

JSUF App. at 3. It is significant that Mr. Cutler refers to "unscheduled time." The City has specific rules regarding "unscheduled absences" by probationary employees. HEC 300-02 includes the following disciplinary chart:

| Tardies(Occurrences) | Unscheduled time (Hrs) | Action to be taken |
|---|---|---|
| 7 | 40 Hours unscheduled time | Probationary Counseling |
| 8+ | Additional time | Further corrective action - up to/including termination. *All unscheduled time will require documentation. (Not needed for tardies) |
| | Failure to bring documentation | Further corrective action - up to/including termination |

PROBATIONARY ATTENDANCE AND PUNCTUALITY CRITERIA

JSUF App. at 32. The City's contemporaneous records show that Ms. Byrd had 16 hours of unscheduled time as of November 2017, and the City has produced no record of other unscheduled time other than the denied FMLA leave in February 2018. JSUF ¶¶ 16-17. Ms. Byrd never received a probationary counseling, as she never had 40 hours of unscheduled leave. JSUF ¶ 12.

On February 26, 2018, the undersigned attorney sent a letter to Mr. Cutler pointing out that these actions violated the FMLA. Byrd Decl. exh. 1-A. Several weeks later, on March 13, 2018, Donald Fleming of the City of Houston Legal Department replied that "a verification of HEC records indicate that approval of any such FML was done in error – thus the subsequent Notification of Disapproval. Ms. Byrd obviously did not qualify under either the FML and [sic] the City's own policy." Byrd Decl. exh. 1-B. Mr. Fleming stated that Ms. Byrd was "removed from service with the City" because of "unsatisfactory attendance during her probation."

6

II. The City Violated the FMLA.

    A. The City Is Estopped from Denying Eligibility and Coverage.

The City admits that it is a public agency and thus an "employer" within the meaning of the FMLA. 29 U.S.C. § 2611(4)(A)(iii); Answer ¶ 6 (Doc. 5). But not all employees of an "employer" are protected by the FMLA. An "eligible employee" must have been employed for 12 months and must have worked at least 1,250 hours. 29 U.S.C. § 2611(2)(A). Ms. Byrd had not worked for the City for 12 consecutive months. This led the City to conclude that Ms. Byrd was not an "eligible employee." Technically, the City was correct, but as a matter of law the City is estopped from denying eligibility.

Once again, the Fifth Circuit articulated the elements of the estoppel theory in the *Minard* decision:

> Accordingly, an employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an "eligible employee" and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment.

*Minard v. ITC Deltacom Communications, Inc.,* 447 F.3d 352, 359 (5th Cir. 2006). Each element is met:

(1) As described above, the City made a definite representation to Ms. Byrd that she was an "eligible employee" and entitled to leave under the FMLA. The City did this both orally and in writing.

(2) The City had reason to believe that Ms. Byrd would rely on the representation. The City knew that Ms. Byrd was leaving to care for her daughter. Byrd Decl. ¶ 3.

(3) Ms. Byrd reasonably relied on the representation from the "FMLA Coordinator" and took action to her detriment (by taking the leave). Ms. Byrd is not a lawyer

7

    and did not know the specific requirements for FMLA leave. If she had known that she would lose her job, she would have worked with her family to find alternative arrangements. Ms. Byrd could not afford to lose her job. Byrd Decl. ¶ 4.

In sum, the City is estopped from contesting eligibility under the FMLA because Ms. Byrd relied on the City's assurances that she was eligible and that her leave was covered.

 Additionally, this result is compelled by the FMLA and its regulations. In particular, the FMLA contains detailed notice provisions that require an employer to inform the employee with respect to eligibility. The FMLA provides that, "when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave with five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). This notice "must state whether the employee is eligible for FMLA leave." *Id.*. § 825.300(b)(2). The City satisfied this requirement by issuing a Notice of Eligibility and Rights and Responsibilities, stating that Ms. Byrd was eligible for FMLA leave. JSUF App. at 63-64.

 Failure to comply with these provisions may trigger liability under the FMLA. *Id.* § 825.300(e). While it is possible for an employer to make a retroactive designation, it may do so only if the change "does not cause harm or injury to the employee." *Id.* § 825.301(d). As the Seventh Circuit observed, "there must be some ability for an employee to rely on a grant of leave without risk of retroactive revocation months down the road." *Holder v. Illinois Dep't of Corr.*, 751 F.3d 486, 495 (7th Cir. 2014).

 Both orally and in writing, the City told Ms. Byrd that she was eligible and that her leave was covered by the FMLA. The FMLA and its regulations allowed Ms. Byrd to rely on the City's

8

determinations, and in fact she did so rely. Under the undisputed facts of the case, the City is estopped from denying coverage as a matter of law.

B. <u>The Remaining Elements of an Interference Claim Are Undisputed</u>.

This is an "interference" claim under the FMLA. The Fifth Circuit has listed the elements of a prima facie case of interference as follows:

> To establish a prima facie interference case, Lanier must show that (1) she was an eligible employee, (2) UTSW was an employer subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, and (5) UTSW denied her the benefits to which she was entitled under the FMLA.

*Lanier v. Univ. of Tex. Southwestern Med. Ctr.*, 527 Fed. Appx. 312, 316 (5th Cir. 2013) (copy in the Appendix). Elements 1, 3, and 4 are resolved by the estoppel argument, in that the City told Ms. Byrd that she was eligible and that she was entitled to leave. Element 2 is undisputed, in that the City admits that it is an employer within the meaning of the FMLA. Answer ¶ 6 (Doc. 5). Element 5 is also undisputed, in that the City retroactively denied the FMLA leave.

C. <u>The City Fired Ms. Byrd for Absences That Were Covered by the FMLA</u>.

While an employer can seek to rebut the prima facie case with evidence of other grounds for firing the employee, the City does not claim that it fired Ms. Byrd for poor performance or misconduct unrelated to her absences. However, after the City reneged on its offer to reinstate Ms. Byrd as part of this lawsuit, the City set out to invent a justification for the termination. In discovery, the City has claimed that Ms. Byrd had multiple absences in November 2017 and that these absences formed the basis for her termination in February 2018.

This explanation is patently false, and the summary judgment evidence negates any attempt by the City to create genuine issue of material fact. In particular:

9

(1)     Probationary employees like Ms. Byrd accrue sick time and vacation time. By November 2017, Ms. Byrd had worked for the City long enough to accrue sick time and vacation time. Byrd Decl. ¶ 9; *see* Riley Decl. exh. 1-H (pay statements showing leave accrual over time).

(2)     Ms. Byrd was ill in November 2017 and used <u>scheduled</u> leave time (vacation and sick time) to cover most of her absences. Byrd Decl. ¶ 9. The City's policy specifies that vacation time and sick leave can be scheduled leave time. JSUF ¶ 19.

(3)     This is confirmed by Ms. Byrd's Employee Performance Monthly Review for November 2017 (dated December 5, 2017), which reflects that Ms. Byrd had 8.0 hours of unscheduled time for the month and 16.0 hours for the year to date. JSUF App. at 7.

(4)     This is further confirmed by the contemporaneous time sheet, which reflects one day (8.0 hours) of unscheduled time during November 2017 (November 18). JSUP App. at 38.

(5)     It is undisputed that there are no other contemporaneous records showing unscheduled time between November 2018 and the FMLA leave in February 2018. JSUF ¶ 17. The time sheet records do not reflect any such unscheduled time. JSUF ¶ 18.

(6)     If Ms. Byrd really had large quantities of unscheduled time prior to February 2018, the City's policy would have required that she be given probationary counseling after 40 hours of unscheduled time. JSUF ¶ 11. This never happened. JSUF ¶ 12.

(7)     In terminating Ms. Byrd, Mr. Cutler stated that she had exceeded 40 hours of <u>unscheduled</u> time. JSUF App. at 3. <u>Without counting the FMLA time, the City's records show that Ms. Byrd had only 16 hours of unscheduled time.</u>

(8)     The City terminated Ms. Byrd nine days after retroactively denying her eligibility for FMLA leave. The City treated the FMLA time as "unscheduled vacation" and "AWOL." JSUF ¶ 18; JSUF App. at 40-41.

10

(9) At that point, three months had passed since Ms. Byrd's scheduled absences in November 2017. There is no contemporaneous record showing that Ms. Byrd was fired or otherwise disciplined based on the scheduled absences in November 2017.

(10) Ms. Byrd's co-worker, Brittany Riley, took FMLA leave around the same time as Ms. Byrd, had her FMLA eligibility retroactively denied at the same time as Ms. Byrd, and was fired around the same time as Ms. Byrd. Riley Decl. ¶¶ 4-10. Ms. Riley had previously received the probationary counseling for 40 hours of unscheduled time. Riley Decl. ¶ 4. The termination letters are virtually identical, except that Mr. Cutler removed the references to the probationary counseling from Ms. Byrd's letter. *Compare* Riley Decl. exh. 1-E *with* JSUF App. at 3.

In light of all of these facts, there is no genuine issue of material fact with respect to the reasons for Ms. Byrd's termination. As Mr. Cutler stated, she was fired because she had over 40 hours of <u>unscheduled</u> time. If the FMLA time from February 2018 is excluded, the City's records show that Ms. Byrd had only 16 hours of unscheduled time. While the City now wishes to claim that it fired Ms. Byrd based on scheduled time, (1) this contradicts the termination letter, and (2) it is contrary to the City's own policy.

Accordingly, there is no genuine issue of material fact with respect to the City's liability under the FMLA. Ms. Byrd is entitled to summary judgment with respect to liability.

III. <u>The City is Liable for Liquidated Damages</u>.

This motion does not seek a determination of the <u>amount</u> of back pay, front pay, and similar forms of damages under the FMLA, nor does it address Ms. Byrd's claim for reinstatement. 29 U.S.C. § 2617(a)(1) (setting forth the types of damages and relief available under the FMLA).

However, this motion addresses the City's liability for "an additional amount as liquidated damages equal to the sum of the amount described in clause (i) of this subparagraph [back pay and

11

benefits] and the interest described in clause (ii) of this subparagraph [prejudgment interest]." *Id.* § 2617(a)(1)(A)(iii). This is similar to the liquidated damages provision that applies to overtime cases under the FLSA. Like the FLSA, the FMLA provides that the Court may reduce the City's liability for liquidated damages if the City "proves to the satisfaction of the court that the act or omission which violated [the FMLA] was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of [the FMLA]." *Id.* The Eighth Circuit explained this provision:

> To avoid a liquidated damages award, the defendant bears the burden of establishing that it acted with subjective good faith and that it had an objectively reasonable belief that its conduct did not violate the law. The good faith requirement demands that the defendant establish that it honestly intended to ascertain the dictates of the FMLA and to act in conformance with it.
>
> However, even if the employer did act in good faith, "the decision to award liquidated damages is still within the discretion of the trial court." The district court should exercise its discretion "consistently with the strong presumption under the statute in favor of doubling."

*Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 868-69 (8th Cir. 2006) (citations omitted).

For purposes of this motion, we will assume that there is a fact issue as to subjective good faith. However, the summary judgment evidence shows that the City did not have objectively reasonable grounds for believing that its conduct was lawful. The summary judgment evidence shows that (1) the City and its FMLA Coordinator approved Ms. Byrd's eligibility; (2) the City then retroactively denied the FMLA leave, even though nothing in the FMLA permits an employer to do this when it harms the employee; (3) the City then fired Ms. Byrd and told her that she had no right to appeal; (4) several days later, the undersigned counsel informed the City that it was violating the law, including citations to *Minard* and to the applicable regulations (Byrd Decl. exh. 1-A); and (5) the City persisted in terminating Ms. Byrd even after receiving this explanation (Byrd Decl. exh. 1-B). There is no objectively reasonable basis for the City's actions.

In the *Riley* lawsuit, the City filed an affidavit from Shirley Blackshear – the City's FMLA Coordinator – in which she claims that she did not understand the requirements for eligibility under the FMLA, that the City's payroll system was insufficient to determine eligibility, and that she was disciplined for screwing up Ms. Riley and Ms. Byrd's leave requests. Blackshear Aff. at 1-2 (copy in Appendix). Despite throwing Ms. Blackshear under the bus, the City offers no reason why its actions could ever be deemed objectively reasonable. The fact that Ms. Blackshear was incompetent and screwed up is not a justification for firing Ms. Byrd.

The City bears the burden of proof on this issue. In the absence of any evidence to support a finding that the City had an objectively reasonable basis for its actions, the Court should grant this motion and rule that the City is fully liable for liquidated damages.

IV. Conclusion

For the foregoing reasons, the Court should grant summary judgment (1) as to liability under the FMLA, and (2) as to liability for 100% liquidated damages. The remaining issues in the case will be whether the City must reinstate Ms. Byrd, the calculation of actual damages and prejudgment interest, the calculation of liquidated damages, and the calculation of attorneys' fees.

Respectfully submitted,

/s/ David C. Holmes
David C. Holmes, Attorney in Charge
State Bar No. 09907150
Southern District No. 5494
13201 Northwest Freeway, Suite 800
Houston, Texas 77040
Telephone: 713-586-8862
Fax: 713-586-8863
dholmes282@aol.com

ATTORNEY FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

      I certify that a true and correct copy of this pleading was sent electronically to all counsel of record on October 25, 2018.

                                     /s/ David C. Holmes
                                         David C. Holmes